# Matter of Pascacio GONZALEZ JIMENEZ, Respondent

*Decided July 9, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Use of false or stolen Social Security numbers and providing false information on tax returns are negative considerations that weigh against a favorable exercise of discretion.

(2) When a respondent seeks to excuse conduct by claiming to have relied on professional advice, the respondent should submit evidence of the specific advice given and explain why it was reasonable to rely on such advice.

FOR THE RESPONDENT: Jill Aleshire, Esquire, Naples, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Evagelia Solomos, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; MULLANE and GOODWIN, Appellate Immigration Judges.

MALPHRUS, Chief Appellate Immigration Judge:

In a decision dated December 19, 2024, the Immigration Judge denied the respondent's applications for cancellation of removal and voluntary departure under sections 240A(b)(1) and 240B(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1229b(b)(1), 1229c(b)(1) (2018). The respondent appeals from the Immigration Judge's decision. The Department of Homeland Security ("DHS") opposes the appeal. Because we conclude that the respondent does not warrant a favorable exercise of discretion, the appeal will be dismissed.

The respondent is a native and citizen of Mexico. He conceded, through counsel, that he is removable as an alien present in the United States who has not been admitted or paroled. INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (2018). He subsequently filed an application for cancellation of removal for certain nonpermanent residents and requested voluntary departure in the alternative.

The Immigration Judge found the respondent ineligible for cancellation of removal and voluntary departure because he failed to demonstrate good moral character or that his removal would result in exceptional and extremely

unusual hardship to his United States citizen children. INA §§ 240A(b)(1)(B), (D), 240B(b)(1)(B), 8 U.S.C. §§ 1229b(b)(1)(B), (D), 1229c(b)(1)(B). The Immigration Judge also found, in the alternative, that the respondent did not merit a favorable exercise of discretion.

Cancellation of removal and voluntary departure are both discretionary forms of relief. *See* INA §§ 240A(b)(1), 240B(b)(1), 8 U.S.C. §§ 1229b(b)(1), 1229c(b)(1); *Matter of Bain*, 29 I&N Dec. 72, 72–73 (BIA 2025) (cancellation of removal); *Matter of Pinzon*, 26 I&N Dec. 189, 195 (BIA 2013) (voluntary departure). A respondent who applies for such relief bears the burden of proving that he satisfies all statutory eligibility requirements and that he merits a favorable exercise of discretion. *See Matter of Bain*, 29 I&N Dec. at 72; *Matter of Pinzon*, 26 I&N Dec. at 195; *see also* INA § 240(c)(4)(A), 8 U.S.C. § 1229a(c)(4)(A) (2018).

In exercising discretion, we "must balance the adverse factors evidencing the alien's undesirability as a permanent resident with the social and humane considerations presented in his (or her) behalf to determine whether the granting of . . . relief appears in the best interest of this country." *Matter of C-V-T-*, 22 I&N Dec. 7, 11 (BIA 1998) (quoting *Matter of Marin*, 16 I&N Dec. 581, 584 (BIA 1978)). Factors relevant to discretion include family ties within the United States, length of residence in this country, evidence of hardship to the respondent's family if deportation occurs, military service, history of employment, property or business ties, service to the community, and, where a criminal record exists, proof of rehabilitation. *Id*. Where adverse factors are present, the respondent should present offsetting favorable evidence, which may require unusual or even outstanding equities, to outweigh the negative factors. *Id*.; *see also Matter of D-A-C-*, 27 I&N Dec. 575, 578 (BIA 2019) (holding in the context of a discretionary grant of Temporary Protected Status that "any adverse factors, including recent criminal activity, must be offset by significant additional equities"); *Matter of Arai*, 13 I&N Dec. 494, 496 (BIA 1970) (concluding that where there are adverse factors weighing against the approval of an adjustment of status application, the applicant may need to offset those factors by showing "unusual or even outstanding equities"). We review de novo whether the respondent merits a favorable exercise of discretion. 8 C.F.R. § 1003.1(d)(3)(ii) (2025).

We begin by considering the respondent's equities. The respondent entered the United States as a teenager, has resided in this country for nearly 20 years, and has significant family ties. He has maintained consistent gainful employment and has received commendations from his employer and

neighbors. We recognize that removal to Mexico will result in significant hardship to the respondent and his family. His four United States citizen children will either be separated from the respondent or have to relocate with him to an unfamiliar country with a lower standard of living and fewer resources than the United States. Three of the children have been diagnosed with medical conditions and developmental delays for which they previously received treatment in the United States. However, as the most recent medical records submitted for the children are dated 2020, and the respondent has not established that they currently receive or need intensive medical or educational interventions, their expected hardship is uncertain.

We agree with the Immigration Judge that the foregoing equities are outweighed by the negative factors in this case. The most significant negative consideration is the respondent's 2024 arrest in Florida for drunk driving with a high blood-alcohol content and with his then 10-year-old son in the car. *See Matter of Thomas*, 21 I&N Dec. 20, 23–25 (BIA 1995) (holding that "criminal conduct which has not culminated in a final conviction" remains relevant as an adverse discretionary factor when established by probative evidence). "Drunk driving is an extremely dangerous crime" that poses a grave danger to the lives and property of others. *Begay v. United States*, 553 U.S. 137, 141 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015); *see also Matter of Castillo-Perez*, 27 I&N Dec. 664, 669–70 (A.G. 2019) (collecting cases). Based on the Immigration Judge's factual findings regarding the circumstances of the arrest, the respondent created a particularly acute risk of harm by driving drunk with his young son in the car after having reportedly consumed about 20 beers. The quantity of alcohol consumed and the respondent's actions in endangering a child increase the negative impact of his DUI arrest.[1]

Also weighing against a favorable exercise of discretion is the respondent's dishonesty in his dealings with the United States, repeatedly using false or stolen social security numbers for tax and work-eligibility purposes. The Immigration Judge did not clearly err in finding that the respondent utilized two different Social Security numbers, including one belonging to a deceased United States citizen. *See* 8 C.F.R. § 1003.1(d)(3)(i). The respondent also provided false information on some of his tax returns, listing his cousins in Mexico as nieces and nephews living with him as

---

[1] The respondent testified that he has not received treatment for alcoholism and does not consider himself to be an alcoholic.

household dependents, and claimed income tax credits to which he was not entitled.[2]

Use of false or stolen Social Security numbers and providing false information on tax returns are negative considerations that weigh against a favorable exercise of discretion. Presenting a false Social Security number and false information on tax returns are examples of deceptive conduct that reflects adversely on an alien's character. *See Cuenca-Arroyo v. Garland*, 123 F.4th 781, 785 (5th Cir. 2024) (recognizing that "misrepresentations on tax filings, such as claiming a dependent nephew residing in Mexico who did not qualify under U.S. tax law . . . reflect adversely on [an alien's] credibility and character, which are relevant factors in the discretionary analysis"); *Marin-Rodriguez v. Holder*, 710 F.3d 734, 739 (7th Cir. 2013) ("By knowingly presenting a false Social Security card to an employer to obtain and maintain unauthorized employment, [the alien] . . . engaged in deceptive conduct."). Use of an unauthorized Social Security number "disrupts the ability of the government to oversee the management of social security accounts; impacts legitimate tax collection efforts; and imposes a public cost in efforts to protect personal information." *Munoz-Rivera v. Wilkinson*, 986 F.3d 587, 592 (5th Cir. 2021). Moreover, while not the case here, conduct of this nature can result in criminal prosecution. *See, e.g.*, 26 U.S.C. § 7206(1) (criminalizing making a material false statement on a tax return); 42 U.S.C. § 408(a)(7)(B) (criminalizing misrepresenting a Social Security number to be one's own for any purpose).

The respondent claims that he did not know such conduct was against the law and that he reasonably relied upon professional advice when filing his taxes. Specifically, he asserts that all his tax forms were in English, a language he does not speak or read, and that he was told by his tax professional that he was allowed to claim his relatives in Mexico as dependents on his tax return. With respect to the Social Security numbers, the respondent testified that he only used one Social Security number and that he thought the Social Security number was his. He further testified that an attorney provided him with the Social Security number he used and that he was told it was his. He claims that he was unaware that the number belonged to another person.

The Immigration Judge did not credit this portion of the respondent's testimony and instead found that he testified falsely regarding his use of the Social Security numbers and his knowledge of the false statements on the tax

---

[2] The respondent does not claim that he financially supported these family members.

returns. "[L]ack of candor in itself serves as an adverse factor weighing against a favorable exercise of discretion." *Matter of Burbano*, 20 I&N Dec. 872, 876 (BIA 1994); *see also Matter of Gomez-Beltran*, 26 I&N Dec. 765, 768 (BIA 2016) ("Truthful testimony and disclosures are critical to the effective operation of the immigration court system."). We discern no clear error in the Immigration Judge's factual findings regarding the respondent's credibility. *See* 8 C.F.R. § 1003.1(d)(3)(i). The respondent's testimony that he only used one Social Security number is contradicted by the documentary evidence reflecting two Social Security numbers listed on his tax returns and W-2 forms. Further, the respondent's testimony that he obtained a Social Security number about 8 years prior to the 2024 hearing from an attorney is contradicted by the respondent's tax returns and W-2 forms from as early as 2007 reflecting two false Social Security numbers.

Even apart from the Immigration Judge's finding that the respondent provided false testimony, the respondent's claimed lack of knowledge is not sufficient to negate the negative considerations in this case. It is well settled that ignorance of the law is not an excuse or defense against unlawful conduct. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010) ("We have long recognized the 'common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.'" (citation omitted)); *see also Cheek v. United States*, 498 U.S. 192, 199 (1991) (noting the "deeply rooted" general rule that ignorance of the law is no excuse). The respondent has a duty to ensure the accuracy of any representation he makes to governmental authorities. *See Matter of A.J. Valdez and Z. Valdez*, 27 I&N Dec. 496, 500 (BIA 2018) ("[I]t is reasonable to expect that aliens will take steps to ascertain the accuracy of documents they sign."). The respondent signed his tax returns and employment forms under penalty of perjury, and it was reasonable for the Immigration Judge to infer that he knew and assented to their contents. *See id.* at 499–500 (holding that an alien's signature on an immigration application establishes a strong presumption that he or she knows of and has assented to the contents of the application, absent evidence of fraud or other wrongful acts by another person).

The respondent claims that he relied on the professional advice of his tax preparer when filing his tax returns and of the attorney who obtained the Social Security number for him.[3] A claim of reasonable reliance on professional advice presupposes that such advice was sought in good faith

---

[3] The respondent has not asserted a claim of ineffective assistance of counsel.

and that in relying on such advice, one is not willfully ignorant. *See generally Bautista v. Star Cruises*, 396 F.3d 1289, 1301 (11th Cir. 2005) (recognizing "the general principle that '[o]ne who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation'" (alteration in original) (citation omitted)). When a respondent seeks to excuse conduct by claiming to have relied on professional advice, the respondent should submit evidence of the specific advice given and explain why it was reasonable to rely on such advice. *Cf. Garland v. Ming Dai*, 593 U.S. 357, 371 (2021) (holding that the agency need not find that credible testimony is persuasive or alone sufficient to meet the alien's burden of proof); *Matter of L-A-C-*, 26 I&N Dec. 516, 519 (BIA 2015) ("[R]egardless of whether an applicant is deemed credible, he [or she] has the burden to corroborate the material elements of the claim where the evidence is reasonably obtainable, without advance notice from the Immigration Judge.").

Here, the respondent's vague testimony that he received his Social Security number 8 years prior to the hearing based on the "10 years" law from an attorney whose name and information he could not remember is contradicted by evidence that he used two false Social Security numbers on prior tax filings. Thus, the evidence is insufficient to support his claim that he reasonably believed this Social Security number was legitimately obtained. With respect to the respondent's false claims regarding his dependents on his tax filings, he did not present any evidence from his tax preparer or any other tax professional supporting his claim that he was told he could claim relatives in Mexico whom he did not support as dependents. Based on the evidence provided, the respondent has not demonstrated that he reasonably relied on professional advice when he listed false or stolen Social Security numbers on his tax forms and employment paperwork and falsely claimed relatives living abroad as dependents for purposes of a tax credit.

Weighing the respondent's equities against these negative factors, we conclude on balance that a favorable exercise of discretion would not be in the best interests of the United States. *See Matter of C-V-T-*, 22 I&N Dec. at 11. Therefore, we will deny his applications for cancellation of removal and voluntary departure in the exercise of discretion. We need not address the respondent's arguments regarding good moral character and hardship. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). The appeal will be dismissed.

**ORDER:** The respondent's appeal is dismissed.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2025).